IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOHN M. MÉNDEZ-NIEVES et al.,

Plaintiffs,

v.

PEDRO PIERLUISI-URRUTIA et al.,

Defendants.

CIVIL NO. 25-1662 (CVR)

# OPINION AND ORDER

## INTRODUCTION

John M. Méndez-Nieves ("Sergeant Méndez"), Luis O. Ruiz-Morán ("Sergeant Ruiz"), José M. Rivera-Nieves ("Sergeant Rivera"), Lixzander Irrizary-Díaz ("Sergeant Irizarry"), Alejandro González-Pérez ("Sergeant González"), Jesús Molina-Martínez ("Sergeant Molina"), Efraín Colón-Santana ("Sergeant Colón"), Jorge Vargas-Rodríguez ("Sergeant Vargas"), Carmen Padín-Dumeng ("Sergeant Padín"), Julián R. Egea-Cardona ("Lieutenant Egea"), Argenis M. Roldán-Lucca ("Lieutenant Roldán"), Heriberto Quiñones-González ("Lieutenant Quiñones"), Miguel Cartagena-Negro ("Lieutenant Cartagena"), Nelson Díaz-Ortiz ("Lieutenant Díaz"), Melvin Torres-Padilla ("Captain Torres"), Efraín Pérez-Pérez ("Captain Pérez") and José A. Ayala-Sullivan ("Inspector Ayala") (collectively, "Plaintiffs") filed the present suit against Pedro Pierluisi-Urrutia ("Governor Pierluisi"), Alexis Torres-Ríos ("Secretary Torres"), Marcos Concepción-Tirado ("Commissioner Concepción"), Manuel Medina-Moya ("Captain Medina"), Joseph McDevitt-Cruz ("Assistant Commissioner McDevitt"), Carlos Ripoll-Olmeda ("Special Assistant Ripoll") and Yadira Rivera-Pabón ("Director Rivera") (collectively,

"Defendants"), in both their personal and official capacities, under 42 U.S.C. § 1983 for alleged violations of the First and Fourteenth Amendments of the United States Constitution and Article II, Sections 1, 8 and 16 of the Constitution of the Commonwealth of Puerto Rico. U.S. Const. amends. I and XIV; P.R. Const. art. II, secs. 1, 8 and 16. Plaintiffs seek compensatory damages for loss of income, career opportunities, fringe and pension benefits, emotional distress, mental anguish, embarrassment, humiliation, dishonor and other injuries. Plaintiffs request punitive damages, and declaratory and injunctive relief under Articles 1536 and 1538 of the Civil Code of Puerto Rico of 2020. P.R. Laws Ann. tit. 31, §§ 10801 and 10803. They also seek costs and attorneys' fees pursuant to 42 U.S.C. § 1988. (Docket No. 1).

In essence, Plaintiffs allege they are firefighters of the Puerto Rico Fire Corps Bureau ("P.R. Fire Corps"), a bureau within the Department of Public Safety ("the Department") that offers fire extinction and other first-responder services and is responsible for the implementation of fire prevention measures and policies. They aver most of them were passed-over for a promotion during 2023 due to their lack of affiliation with Governor Pierluisi during his campaign for election in 2020 and re-election in 2024 and for their lack of membership of Firefighters for Statehood ("Bomberos Estadistas," in Spanish), an organization composed of P.R. Fire Corps firefighters who are affiliated with the New Progressive Party ("PNP," for its Spanish acronym).[1] They posit the firefighters who received promotions were avid supporters of Governor Pierluisi's campaigns and/or members of Bomberos Estadistas, and were awarded higher salaries than originally

[1] Plaintiffs instead were supporters of current Governor Jenniffer González or of another political party.

announced. The promoted employees ultimately received salaries which were higher than those of higher ranked firefighters in the P.R. Fire Corps, who had held those positions for years.

Before the Court is Defendants' "Motion to Dismiss for Failure to State a Claim" along with its corresponding Opposition and Reply. (Docket Nos. 17, 24 and 27).

For the reasons explained below, Defendants' Motion to Dismiss is GRANTED. (Docket No. 17).

## LEGAL STANDARD

FED. R. CIV. P. 12(b)(6) allows defendants to request dismissal on the grounds that a plaintiff has failed to state a claim upon which relief may be granted. To rule on a 12(b)(6) motion, the Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Second, it should "take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Id. See also Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff must provide the grounds of his cause of action with more than just a formulaic recitation of the elements that give rise to a cause of action. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). "[T]he combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

When considering a 12(b)(6) motion, the inquiry is "whether a liberal reading of the complaint can reasonably admit of a claim." Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996). Although inferences must be made in the plaintiff's favor, the Court should not credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). Conclusory allegations must also be ignored. Santiago Ortiz v. Caparra Center Assoc., LLC, 261 F.Supp.3d 240, 243 (D.P.R. 2016). Regardless of how skeptical the Court may be with regards to the allegations; it must accept them as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). If the allegations are "enough to raise a right to relief above the speculative level," a Rule 12(b)(6) motion must be denied. Twombly, 550 U.S. at 555.

## STATEMENT OF FACTS

The Court accepts Plaintiffs' allegations as true for purposes of the Motion to Dismiss. Rae v. Woburn Pub. Sch., 113 F.4th 86, 98 (1st Cir. 2024); Rivera-Rosario v. LSREF2 Island Holdings, Ltd. Inc., 79 F.4th 1, 4 (1st Cir. 2023). All facts are derived from the Complaint. (Docket No. 1).

The Department is an agency in the Commonwealth of Puerto Rico, divided into six (6) bureaus, one of which is the P.R. Fire Corps. The Department is headed by the Secretary of Public Safety, Secretary Torres, who was appointed by the governor of Puerto Rico with the consent of the Senate and is responsible for the administration and supervision of the Department. Specifically, the Secretary oversees the hierarchy and administration of the Department and its bureaus and has the authority to designate, promote, demote, transfer, reassign and terminate or otherwise discipline career public employees who work for the Department and its bureaus. The P.R. Fire Corps is headed

by a commissioner, Commissioner Concepción, who is appointed by the Governor with the consent of the Senate. The P.R. Fire Corps is composed of ranked and non-ranked personnel. The ranked personnel include Captains, Lieutenants, Sergeants and three (3) ranks of Inspectors, namely, Inspectors I, II and III. All ranked officers are career service public employees, and the Department and P.R. Fire Corps are required to recruit, select, train, promote, transfer, demote and retain them based on their capabilities and performance of the duties inherent to their positions.

On October 4, 2021, Secretary Torres posted calls for applications for promotions to the ranks of Sergeant, Lieutenant and Captain. The applications were due by October 20, 2021. The calls for applications indicated, among other things, that after submitting the application along with the required documentation, each applicant would receive an evaluation score based on their qualifications and other eligibility factors and that, if chosen, the applicant would be placed on a list of qualified candidates in descending order of their evaluation score. The chosen candidates would then be interviewed and evaluated by a three-member Interview and Evaluation of Promotions Committee ("the Committee"), designated by Secretary Torres.

Sergeants Méndez, Ruiz, Rivera, Irizarry, González, Molina, Colón, Vargas and Padín applied to the rank of Lieutenant. Lieutenants Egea, Roldán, Quiñones, Cartagena and Díaz applied to the rank of Captain. The Department of Human Resources, led by Director Rivera, compiled a list of candidates who were fit for promotion, which included all Plaintiffs who applied (collectively, "Plaintiff Applicants").

On May 31, 2022, Secretary Torres designated Captain Medina, Assistant Commissioner McDevitt and Special Assistant Ripoll as the three (3) members of the Committee. The Committee was supervised by Director Rivera.

Per the procedure announced in the call for applications, the candidates for promotion were ranked according to the evaluation score they received during the review of their applications and a list of candidates was created. Plaintiff Applicants all received high evaluations and were, thus, placed high on the list of candidates eligible for promotion to the various ranks. However, they were not notified of their rank, exam scores or the scheduling of any interview. The Committee did not interview any of Plaintiff Applicants.

Between February and March of 2023, the Committee certified one hundred and one (101) candidates for promotion, including candidates who had much lower evaluation scores than Plaintiff Applicants. The Committee then made recommendations for promotion of candidates to the ranks of Lieutenant and Captain without reviewing recommendation letters, based on their personal knowledge of candidates. All but two (2) or three (3) promoted firefighters were affiliated with the PNP and at least forty-two (42) worked directly with Governor Pierluisi's reelection campaign and/or were members of Bomberos Estadistas. Plaintiffs aver these promotions were done at the behest of Governor Pierluisi and Commissioner Concepción and upon the evaluation process carried out by Captain Medina, Assistant Commissioner McDevitt, Special Assistant Ripoll and Director Rivera.

On December 10, 2024, the Public Safety, Science and Technology Commission of the House of Representatives issued a report detailing the P.R. Fire Corps' deviations

from the procedure in the grant of promotions to firefighters in 2023, in violation of Puerto Rico law and the agency's own regulations ("the Report"). Due to this report, Plaintiffs took it upon themselves to investigate the political affiliations of the promoted candidates. All, or most of the candidates passed over for promotion, including Plaintiff Applicants, were known, or perceived to be, affiliated with either the Popular Democratic Party ("PPD," for its Spanish acronym) or Resident Commissioner Jenniffer González (at that time, "Resident Commissioner González"), Governor Pierluisi's political rival in the PNP primaries. Conversely, all or nearly all the firefighters promoted in 2023 were members of Bomberos Estadistas and/or were affiliated with, or participated in, Governor Pierluisi's campaigns for election in 2020 and re-election in 2024.

The salaries assigned to the newly promoted personnel were higher than the salaries announced in the calls for promotion and ended up being higher than those of unpromoted personnel of equal or higher ranks. The firefighters promoted to lieutenant were given salary increases between $564.00 and $1,579.00 per month, making their salaries higher than Lieutenants Egea, Roldán, Quiñones, Cartagena and Díaz, all of which had held the rank of Lieutenant for years. In some cases, the salaries of the new lieutenants were higher than Captains Torres and Pérez and Inspector Ayala's, all which were ranked higher than lieutenants. Similarly, the firefighters promoted to sergeants were given salary increases between $475.00 and $1,996.00 per month, making their salaries higher than Sergeants Méndez, Ruiz, Rivera, Irizarry, González, Molina, Colón, Vargas and Padín, who had held the rank of sergeant for years.

## SUMMARY OF ARGUMENTS

Defendants move the Court to dismiss the case for failure to state a claim. First, they proffer Defendants, in their official capacities, are all protected by Eleventh Amendment immunity, since both the Department and the P.R. Fire Corps are arms of the Puerto Rican Government. Second, they aver Plaintiffs' claims are time-barred since, admittedly, they suffered their injuries between April 5, 2023, and May 16, 2023, but did not file suit until December 9, 2025, that is, two (2) years and seven (7) months after their injuries. In the alternative, assuming the claims are not time-barred, they contend Plaintiffs have not established a viable political discrimination claim against each Defendant in their individual capacity since they have failed to meet each prong of the *prima facie* political discrimination standard, proffering only conclusory allegations. Moreover, Defendants argue Plaintiffs fail to state a due process or equal protection claim since the challenged employment action does not rise to the level of a constitutional violation, or alternatively, they are already protected by the First Amendment. Finally, Defendants proffer Plaintiffs have not identified an authority that can grant the relief requested since they did not sue the state officials who currently have decisional power within the Department and the P.R. Fire Corps. As such, Defendants argue dismissal with prejudice is warranted. (Docket No. 17).

Plaintiffs oppose Defendants' request by arguing Eleventh Amendment immunity is inapplicable because it only applies to monetary damages against Defendants' official capacity, whereas the present case is a suit for monetary damages against Defendants in their personal capacities and injunctive relief in their official capacities. Moreover, they contend their claims are not time-barred under both Puerto Rico's cognitive theory of

damages and the federal inquiry discovery rule, since they realized the promotion process was improperly conducted after the Report was published. They also argue their Complaint states a *prima facie* case of political discrimination since it alleges all necessary elements for this cause of action and, finally, they understand they sufficiently pled due process and equal protection violations since they exposed the unjustifiable, egregious and shocking denial of promotions of Plaintiff Applicants due to their lack of affiliation with Bomberos Estadistas and lack of support for Governor Pierluisi's campaigns. (Docket No. 24).

Defendants rely on Cotto v. Campbell, 126 F.4th 761 (1st Cir. 2025) in their Reply to argue the Ex Parte Young exception is inapposite since that exception allows prospective injunctive relief to prevent a continuing violation of federal law, not retrospective relief as Plaintiffs request and because Plaintiffs did not sue anyone with the authority to grant the relief requested. They reiterate the claims are time-barred and argue the federal discovery rule is inapplicable here because Plaintiffs showed no effort in exercising due diligence to ascertain the causes of their injuries. Finally, they reiterate Fourteenth Amendment Due Process and Equal Protection claims are not the appropriate avenue for political discrimination claims. (Docket No. 27).

## LEGAL ANALYSIS

### 1. **Eleventh Amendment Immunity.**

"The Eleventh Amendment 'prevents private individuals from brining suit against non-consenting states.'" Santiago-Rodríguez v. Puerto Rico, 546 F.Supp.3d 155, 159 (D.P.R. 2021) (quoting García-Hicks v. Vocational Rehab. Admin., 25 F.Supp.3d 204, 209 (D.P.R. 2014)). The idea behind this immunity is to protect "a state's treasury and its

dignitary interests." Santiago-Rodríguez, 546 F.Supp.3d at 159. Notwithstanding this sovereign immunity, it is a well-recognized exception that the state, more specifically state officials, are not protected from suit when injunctive relief is requested. Ex Parte Young, 209 U.S. 123, 162 (1908).

In Ex Parte Young, the Supreme Court of the United States made an important distinction as to the applicability of Eleventh Amendment immunity to state officials in their personal capacities and their official capacities. If a state official, acting under the authority of the state, enforces an unconstitutional act that causes injury, the official should be stripped of his official character and subjected in his personal capacity to the consequences of his conduct. Id., at 160. The state would, thus, "ha[ve] no power to impart to him any immunity from responsibility to the supreme authority of the United States." Id. However, federal courts would be allowed "to issue prospective relief that enjoins state officials[, in their official capacities,] from committing future violations of federal law'" Cotto, 126 F.4th at 767 (quoting Edelman v. Jordan, 415 U.S. 651, 664-665 (1974)). For this relief to apply, however, the violations of federal law must be ongoing and the relief sought must "serve directly to bring an end to a present violation of federal law." Whalen v. Massachusetts Trial Court, 397 F.3d 19, 29 (1st Cir. 2005). Because the question under this exception is whether the relief serves directly to bring an end to a present violation of a federal law, "[w]ithout an ongoing violation to curtail, there are no prospective injunctions for a federal court to issue." Cotto, 126 F.4th at 771. See also Green v. Mansour, 474 U.S. 64, 71 (1985).

Sovereign immunity also applies to "the arms or *alter egos* of the state." García-Hicks, 25 F.Supp.3d at 210. To determine whether an entity is considered an arm of the

state, the First Circuit developed a multi-factor analysis. Courts analyze whether the entity "performs an 'essential' or 'traditional' governmental function," "exercises substantial autonomy over its internal operations," "enjoys meaningful access to, and control over, funds not appropriated from the State treasury," "possesses the status of a separate public corporation," "sue[s] and [can] be sued on its own name," "enter[s] into contracts in its own name," has "a state tax exemption on its property" and is "expressly debarred from incurring debts in the State's name or behalf." González De Blasini v. Family Dept., 278 F. Supp.2d 206, 209 (D.P.R. 2003). If after analyzing these factors, "the activity can be categorized as one usually performed by the government, rather than one performed by a private company," immunity is warranted. Id., at 210.

Defendants posit the Eleventh Amendment protects Governor Pierluisi, Secretary Torres, Commissioner Concepción, Captain Medina, Assistant Commissioner McDevitt, Special Assistant Ripoll and Director Rivera, in their official capacities, from any monetary relief requested. They contend Plaintiffs seek classic monetary relief, *i.e.*, compensatory and punitive damages, expenses, interest, costs and fees, which sovereign immunity jurisdictionally bars. Since the Commonwealth has not waived and Congress has not abrogated this protection, they aver all federal law claims against Defendants in their official capacities must be dismissed with prejudice. Moreover, they rely on Pagán v. Puerto Rico, 991 F.Supp.2d 343, 347 (D.P.R. 2014), to argue the state law claims should also be dismissed since Congress has not abrogated the Eleventh Amendment immunity for state law claims and Puerto Rico has not waived it either. Finally, they contend the Ex Parte Young exception does not apply to the facts at hand because there is no ongoing violation of federal law that could give rise to prospective injunctive relief.

In response, Plaintiffs argue it is not necessary to discuss the applicability of Eleventh Amendment immunity in this case because they are seeking monetary relief from Defendants in their personal capacities and declaratory and injunctive relief against Defendants in their official capacities, which is a well-recognized exception to Eleventh Amendment immunity under Ex Parte Young, 209 U.S. at 162.

"The Commonwealth of Puerto Rico is treated as a state for Eleventh Amendment purposes." Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico and Caribbean Cardiovascular Center Corp., 322 F.3d 56, 61 (1st Cir. 2003). As to the applicability of sovereign immunity to Defendants, this District has previously held that "[i]t is unquestionable that [the Department is] 'an arm of' the Commonwealth of Puerto Rico." Puerto Rico Dep't of Pub. Safety v. Tracfone Wireless, Inc., 514 F.Supp.3d 400, 402 (D.P.R. 2021).[2] Since the P.R. Fire Corps is a bureau within the Department, the Court finds this is sufficient to consider it an arm of the state.[3] Moreover, Plaintiffs do not oppose the applicability of Eleventh Amendment immunity to Defendants in their official capacities.

As for the applicability of the Ex Parte Young exception, it is necessary to evaluate both elements of the exception independently, although they are intertwined. First, an ongoing violation of federal law is required. Courts have interpreted the "ongoing" nature

[2] Although the analysis was conducted for purposes of determining diversity jurisdiction, the test used is the same used to determine whether "an agency is sufficiently an arm of the state to qualify for the protection of the Eleventh Amendment." Puerto Rico Dep't of Pub. Safety, 514 F.Supp.3d at 402 (quoting N.E. Fed. Credit Union v. Neves, 837 F.2d 531, 534 (1st Cir. 1988)).

[3] If more were necessary, the P.R. Fire Corps performs an essential governmental function, for it is tasked with protecting citizens' safety from fires; is administered by the Secretary of the Department; is funded by money obtained by the State treasury, and needs permission from the Secretary of the Department to enter into contracts and agreements. Although the P.R. Fire Corps is its own bureau, it does not operate as an independent entity from the Department. See Puerto Rico Department of Public Safety Act, Act No. 20 of April 10, 2017, as amended, P.R. Laws Ann. tit. 25, §§ 3501 *et seq.*

of the violation on multiple occasions. In Edelman v. Jordan, 415 U.S. 651, 655-666 (1974) and Papasan v. Allain, 478 U.S. 265, 280-281 (1986), the Supreme Court found that the continued withholding funds owed did not meet the threshold for an ongoing violation, rather that it constituted a past violation that amounted to accrued monetary liabilities. In Cotto, 126 F.4th at 770, Plaintiffs filed suit requesting the court to return property that had been forfeited in criminal convictions which had been vacated due to state officials' malfeasance. The First Circuit found that the continued withholding of property constituted one past violation rather than a continuing one.

The Complaint merely requires an allegation of an ongoing violation to survive dismissal. Courts have made a distinction between an ongoing violation and "the lingering effects of a discrete past action." Tahai v. Pollack, No. 2:26-cv-00211-LEW, 2026 WL 1329493, *1 n. 1 (May 13, 2026) (citing Merritts v. Richards, 62 F.4th 764, 771-772 (3rd Cir. 2023)). An ongoing violation requires repeated non-compliance with federal law. For example, in Ex Parte Young, the alleged ongoing violation was that railroad companies were not complying with an order made by the Minnesota legislature that lowered the rates of various railroad companies for the carriage of merchandise between stations within the state. 209 U.S. at 129. Thus, with every ride, the railroad companies were infringing the order. Contrarily, a discrete past action with lingering effects entails one lone violation with prolonged negative effects. For example, in Cotto, 126 F4th at 770, the alleged violation was the continued withholding of forfeited property. The Court concluded the property had been forfeited once; thus, the allegation did not qualify as an ongoing violation. The failure to return the forfeited property was the prolonged effect of one discrete action.

The Court finds the instant case more akin to Cotto than to Ex Parte Young. The denial of promotions and increase in salaries were both one-time decisions that had long term effects on Plaintiffs' employment and income, but they do not constitute repeated violations. Even assuming, for the sake of the argument, there was political discrimination afloat, the alleged discrimination would have occurred once, in 2023, when their promotions were denied. Holding a lower ranked position with a lower paying salary would be the consequences of that one-time political discrimination. This is the epitome of lingering effects of a discrete past action. Although Plaintiffs argue, in a conclusory manner, they are facing an ongoing violation, they proffer no convincing explanation as to how their claims can be considered as such. The Court finds the allegations are insufficient to state a plausible ongoing violation claim that would give rise to the Ex Parte Young exception. As stated earlier, without an ongoing violation, no prospective injunctive relief can be granted. It is, therefore, unnecessary for the Court to engage in a discussion of the second prong. The Eleventh Amendment bars all suits against Defendants in their official capacities as there is no applicable exception.

For the foregoing reasons, Defendants' Motion to Dismiss based on Eleventh Amendment immunity is GRANTED. As such, Plaintiffs' claims against all Defendants, in their official capacities, are DISMISSED WITH PREJUDICE. (Docket No. 17).

**2. Statute of Limitations.**

The statute of limitations for a 42 U.S.C. § 1983 claim is governed by the state's statute of limitations period for personal injury claims. Owens v. Okure, 488 U.S. 235, 249-250 (1989). In Puerto Rico, the Civil Code establishes this period is one year. P.R. Laws Ann. tit. 31, § 9496. Therefore, claims under 42 U.S.C. § 1983 are subjected to a one-

year statute of limitations. This period begins one day after the date of accrual, which symbolizes the date when the plaintiff knew, or reasonably should have known, of his or her injury. González García v. PREPA, 214 F.Supp.2d 194, 200 (D.P.R. 2002). "[I]n employment discrimination actions, limitations periods normally start to run when the employer's decision is made and communicated to the affected employee." Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 750 (1st Cir. 1994). Once "an employee knows that he [or she] has been hurt and also knows that his [or her] employer has inflicted the injury, it is fair to begin the countdown toward repose." Id. "[T]he rules for prescription of employment discrimination actions [, however,] are not inflexible." Id.

"Under federal law, a § 1983 claim accrues when the putative plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Ouellette v. Beaupre, 977 F.3d 127, 135 (1st Cir. 2020) (cleaned up). "[P]ursuant to the federal discovery rule, accrual is delayed until the plaintiff knows, or should know," all the acts comprising the specific constitutional violation. Id. at 136. Although there are suits where this information should be apparent to a plaintiff at the time of the injury, there might be other cases where it is not as clear. Id. For example, "an injury may lie dormant without manifestation until days, months, or even years after it has occurred." Id. In other instances, the facts about causation might be in control of the defendant and might be unavailable to the plaintiff, or difficult to obtain, until after a year has transpired since the injury. Jardín de las Catalinas Ltd. Partnership v. Joyner, 766 F.3d 127, 133 (1st Cir. 2014).

Defendants argue Plaintiffs' claims are time-barred. They highlight that the Complaint explicitly admits Plaintiffs knew they were denied promotions between April

5, 2023, and May 16, 2023, meaning the statute of limitations expired between April 5, 2024, and May 16, 2024. As such, Defendants aver Plaintiffs' Complaint, filed on December 9, 2025, is one (1) year and seven (7) months past the expiration of the statute of limitations.

In opposition, Plaintiffs assert the federal discovery rule protects their claim because they did not discover they had been injured until December 10, 2024, when the Report was issued, detailing the P.R. Fire Corps' deviations from the established procedure in granting promotions to firefighters in 2023. Plaintiffs claim they could not reasonably have known they had been injured before the publication of the Report, since its issuance was what prompted their investigation into the political affiliations of the promoted candidates. In the alternative, they proffer the Complaint's timeliness should be taken up after discovery, once both parties have had a chance to discover evidence regarding the reasons behind the promotions and whether Plaintiffs knew or could have known the discriminatory nature of the promotions.

The Court takes as true the allegations in the Complaint, as it must at this stage, and finds Plaintiffs' argument compelling. Although Plaintiff Applicants were certainly aware of the denial of their promotions since April and May of 2023, this denial, without more, did not necessarily create the inference that it had been unwarranted and was worth investigating. Thus, without the existence of the Report, Plaintiffs had no reason to believe the promotion process had been prejudiced. Even if after discovery the argument fails, the Court finds it is enough, at this juncture, to survive dismissal. Defendants are free to raise this argument again at the summary judgment stage, if deemed appropriate.

For these reasons, Defendants' Motion to Dismiss based on statute of limitations grounds is DENIED. (Docket No. 17).

### 3. Failure to State a Claim.

#### A. Political Discrimination.

"Government officials are forbidden by the First Amendment from taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 13 (1st Cir. 2011). See also Connick v. Myers, 461 U.S. 138 (1983); Branti v. Finkel, 445 U.S. 507 (1980); Elrod v. Burns, 427 U.S. 347 (1976). If a plaintiff believes government officials "deprived [him or] her of [his or her] federally protected rights while acting under color of state law," he or she can bring their cause of action under 42 U.S.C. § 1983. Maymí v. Puerto Rico Ports Authority, 515 F.3d 20, 25 (1st Cir. 2008).

A plausible claim for political discrimination requires four elements, to wit, "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." Ocasio-Hernández, 640 F.3d at 13 (quoting Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 239 (1st Cir. 2010)). In cases such as this one, at the pleading stage "[i]t is not necessary to plead facts sufficient to establish a *prima facie* case" because the *prima facie* case model is an evidentiary standard and not a pleading standard. Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013). Instead, a plaintiff must simply plead sufficient facts so the requirements of the *prima facie* case "shed light upon the plausibility of the claim." Id. In all, the allegations provided regarding each

defendant must be sufficient to make them a plausible defendant. Ocasio-Herandez, 640 F.3d at 16.

Defendants proffer Plaintiffs' allegations do not meet the basic pleading standard because Plaintiffs set out generalized remarks that rest on their self-serving legal conclusions that the claimed actions were taken based on their perceived political affiliation. Conversely, Plaintiffs posit their Complaint is sufficient because the Complaint states (1) Governor Pierluisi, Secretary Torres and Commissioner Concepción (collectively, "Count I Defendants")[4] knew and were aware of Plaintiffs' lack of affiliation with Bomberos Estadistas, (2) all or nearly all candidates passed over for promotion were known or perceived to be affiliated with the PPD or Resident Commissioner González, Governor Pierluisi's political rival, (3) all or nearly all the firefighters promoted in 2023 were members of Bomberos Estadistas and/or affiliated with Governor Pierluisi's campaigns in 2020 and 2024, and (4) political affiliation was a motivating factor for refusing to promote Plaintiff Applicants. In the alternative, Plaintiffs request leave to file an amended complaint to cure any deficiencies.

a. Opposing political affiliations.

Plaintiffs first must allege that Plaintiffs and Count I Defendants have opposing political affiliations. Lamboy-Ortiz, 630 F.3d at 239. For purposes of a political discrimination claim, supporting rival candidates within the same political party is enough to satisfy this prong. Albino v. Mun. of Guayanilla, 925 F.Supp.2d 186, 194 (D.P.R. 2013); Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 72-73 (1st Cir. 2000).

[4] For the sake of clarity, the Court makes this distinction because Count I, the political discrimination claim, is only against Governor Pierluisi, Secretary Torres and Commissioner Concepción.

Plaintiffs claim in the Complaint they "were not members of Bomberos Estadistas [ ] and did not support or participate in Governor [ ] Pierluisi['s] campaign for election as governor under the PNP in 2020 nor supported or participated in [his] campaign for reelection under the same party in 2024."[5] In fact, they posit they "supported or were perceived to have supported Resident Commissioner [ ] González to become the PNP's gubernatorial candidate for the 2024 general elections [ ], and/or a rival political party."[6] On the other hand, they pled Count I Defendants were supporters of Governor Pierluisi during the 2020 and 2024 campaigns.[7]

Although Resident Commissioner González and Governor Pierluisi were members of the same party, they were running against each other in the primaries. Therefore, drawing on Albino and Padilla-García, Plaintiffs have adequately pled they have opposing political affiliations to Count 1 Defendants.

b. Knowledge.

The second prong Plaintiffs must meet is to adequately plead that the Count I Defendants were aware of Plaintiffs' opposing political affiliation. "A plaintiff must plead 'discrete factual events' to show that defendants were aware of his or her political beliefs." Aguiar-Serrano v. Puerto Rico Highways and Transp. Authority, 916 F.Supp.2d 223, 230 (D.P.R. 2013) (quoting Ocasio-Hernández, 640 F.3d at 14-15). Examples of ways to comply with this prong include alleging: "(1) that a plaintiff was asked by defendants about the circumstances relating to how the plaintiff obtained his or her job; (2) that the clerical staff directly asked about a plaintiff's political affiliations; and (3) that employees

[5] Docket No. 1, ¶ 64.
[6] Id.
[7] Id., ¶¶ 65-69.

knew about and frequently discussed the political affiliations of their co-workers." Id.

Plaintiffs state in the Complaint that "Plaintiffs were perceived by [Count I] Defendants to be supporters of Resident Commissioner [ ] González, Governor [ ] Pierluisi['s] challenger in the upcoming gubernatorial primaries [ ], or a rival political party"[8] and "Defendants knew and were aware that Plaintiffs were not affiliated to Bomberos Estadistas and did not support or participate in Governor [ ] Pierluisi['s] [ ] campaign[s]."[9] These assertions are insufficient to establish the knowledge element of a political discrimination claim. The Court explains.

After a careful review of the Complaint and making all inferences in Plaintiffs' favor, it is evident that Plaintiffs do not offer any specific allegations or discrete factual events as to how Count I Defendants knew of their political affiliation. The Complaint simply contains the general conclusory assertions above indicated without any factual support. These allegations, alone, are insufficient to satisfy the knowledge prong in a political discrimination case. The Court cannot make the leap and infer Commissioner Concepción, Governor Pierluisi and Secretary Torres were somehow aware of Plaintiffs' political preferences when they did not work closely with them. In fact, there are no allegations that Commissioner Concepción, Governor Pierluisi and Secretary Torres even knew Plaintiffs. To assume Commissioner Concepción, Governor of Puerto Rico and the Secretary of a Department, composed of six (6) different bureaus with numerous employees, were aware of the political affiliation of Plaintiffs with whom they had minimal contact, if any, is a gap too wide for this Court to breach.

[8] Id., ¶ 70.
[9] Id., ¶ 69.

To reach this decision, the Court finds support in previous decisions from this District in which several Judges have denied compliance with this element where additional facts were provided. See Aguiar-Serrano, 916 F.Supp.2d at 230-231 (finding insufficient plaintiff's allegation that defendants "were fully aware" of her and her husband's political affiliation and activism with the PPD); see also Flores-Silva v. McClintock-Hernández, 827 F.Supp.2d 64, 72 (D.P.R. 2011) (finding insufficient plaintiff's conclusory allegations that defendants knew her political affiliation without setting out factual allegations or details as to how defendants knew); Jiménez-González v. Alvarez-Rubio, 683 F.Supp.2d 177, 183-185 (D.P.R. 2010) (finding insufficient plaintiffs' allegations that they were active members in the PPD and that their defendant supervisors knew of their political affiliation because of a political dispute brought to the supervisors' attention); Febus-Cruz v. Saurí-Santiago, 652 F.Supp.2d 140, 149-150 (D.P.R. 2009) (finding insufficient plaintiff's allegation that he was a highly visible leader of the PPD, he frequently participated in caravans, marches, meetings and distribution of leaflets, was a campaign manager and worked at polling stations, had told defendants of his membership in the PPD, participated in radio programs where he identified himself as such and the political membership of all of his co-workers was common knowledge in the office); Rivera-Feliciano v. State Ins. Fund. Corp., 652 F.Supp.2d 170, 186 (D.P.R. 2009) (finding the allegations that Plaintiff was an active member of the PNP and that his affiliation was well known by the defendants insufficient).

In these cases, substantially more information was provided as to how defendants could have known of a plaintiff's political affiliation and still several Judges found that the allegations were insufficient to satisfy the knowledge requirement. Applying those

same rationales to this case, the Court inevitably concludes the present case also fails to meet the second prong as to Commissioner Concepción, Governor Pierluisi and Secretary Torres.

In sum, but for conclusory allegations, the Complaint lacks factual allegations to explain how Count I Defendants knew of Plaintiffs' political affiliations. See Alamo Rodríguez, 283 F.Supp.2d at 464. Accordingly, Plaintiffs have not met the threshold of establishing by preponderance of the evidence the knowledge prong as to Count I Defendants, namely, Commissioner Concepción, Governor Pierluisi and Secretary Torres. Thus, the Court does not need to discuss the other two (2) elements of a political discrimination claim.

For the foregoing reasons, the Motion to Dismiss for failure to state a political discrimination claim is GRANTED for failure to meet the knowledge requirement prong. Accordingly, all political discrimination claims against Defendants Commissioner Concepción, Governor Pierluisi and Secretary Torres, in their personal capacities, are DISMISSED WITH PREJUDICE. (Docket No. 17).

**B. Due Process.**

The Fourteenth Amendment prohibits a state from depriving any person of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "The touchstone of this due process guarantee is the 'protection of the individual against arbitrary action of government.'" DePoutot v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005) (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)). To establish a substantive due process claim, a plaintiff must claim that the government officials' acts were so egregious as to shock the conscience and that the acts deprived him or her of a protected interest in

life, liberty, or property. Pagán v. Calderón, 448 F.3d 16, 32 (1st Cir. 2006).

Defendants argue the Complaint fails to plead a substantive due process violation since it does not plead conscience-shocking, extreme or outrageous conduct by any individual capacity Defendants. Specifically, they aver that "even assuming the existence of a right to a promotion, no one could seriously contend that it would qualify as a fundamental, constitutional right."[10] Moreover, they posit the due process clause is not a guarantee against incorrect decisions, thus, if allegations of political discrimination and retaliation are covered by the First Amendment, those allegations cannot serve as a basis for a substantive due process claim. Pagán, 448 F.3d at 34.

As for the procedural due process allegations, Defendants explain Plaintiffs must allege: (1) the existence of a protected liberty or property interest and (2) that the defendants, acting under color of state law, deprived them of that interest without a constitutionally adequate process. García-González v. Puig-Morales, 761 F.3d 81, 88 (1st Cir. 2014). They contend Plaintiffs fail to plead a protected property interest, as neither a promotion nor a salary increase comply with this requirement, thus there is no procedural due process violation.

In opposition, Plaintiffs simply argue the facts alleged meet the "conscious-shocking standard" and merely ask the Court to take their word for it. They argue "the brazen nature of Defendants['] conduct of only promoting firefighters that openly supported co-defendant [Governor Pierluisi's] political aspiration in violation of

[10] Docket No. 17, p. 27.

[Plaintiffs'] fundamental right to not be politically discriminated cannot be described as anything less than shocking to the [conscience]."[11]

Before going any further the Court notes, "[s]ubstantive due process is an inappropriate avenue of relief when the governmental conduct at issue is covered by a specific constitutional provision." Pagán, 448 F.3d at 33. Since Plaintiffs aver they were discriminated against due to their political affiliation, their avenue of redress is the First Amendment, not the Fourteenth. See Id., at 33-34 ("It is the First Amendment, not the Fourteenth Amendment, that guards individuals against state-sponsored acts of political discrimination or retaliation.").

Moreover, "[c]onscience shocking conduct has been found in extreme cases entailing physical or psychological abuse, or significant interference with a protected relationship." Concepción v. Mun. of Gurabo, 558 F.Supp.2d 149, 161 (D.P.R. 2007). The Court finds the alleged behavior, even if true, is insufficient to meet this standard as denying promotions and assigning salaries based on political affiliation falls short of "outrageous, uncivilized, and intolerable" behavior. Id. See Camacho-Torres v. Betancourt-Vázquez, 722 F.Supp.2d 150, 156 (D.P.R. 2010) (where the Court declined to find a politically motivated firing met the standard of conscience-shocking); Rivera-Feliciano, 652 F.Supp.2d at 183 (where the Court declined to find allegations of a position being filled by a rival political party's affiliate as conscience-shocking); Maymí, 515 F.3d at 30 (where the Court declined to consider reinstatement to a career position with inferior duties and a decreased salary as conscience-shocking); Concepción, 558

[11] Docket No. 24, p. 15.

F.Supp.2d at 161 (where the Court declined to consider a reduction in salary, a demotion, a termination of employment and a transfer as conscience-shocking). But see, Rochin v. California, 324 U.S. 165 (1952) (where the Court considered forcibly pumping a suspect's stomach for drugs as conscience-shocking); Harrington v. Almy, 977 F.2d 37 (1st Cir. 1992) (where the Court considered conditioning employment on taking a highly intrusive physical test of sexual arousal as conscience-shocking). Thus, there are no viable substantive due process violation claims raised in this case.

As to the procedural due process claims, Plaintiffs stated in their Opposition that "no procedural due process claim is being asserted."[12] As such, there is no need for the Court to discuss this matter further.[13]

For the foregoing reasons, the Motion to Dismiss as to the Fourteenth Amendment Due Process violation claims is GRANTED. Hence, all Due Process claims filed against Defendants Commissioner Concepción, Governor Pierluisi and Secretary Torres, in their personal capacities, are DISMISSED WITH PREJUDICE. (Docket No. 17).

**C. Equal Protection.**

"To survive a motion to dismiss, an equal protection claim 'must outline facts sufficient to convey specific instances of unlawful discrimination.'" Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992) (quoting Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d 49, 53 (1st Cir. 1990)). "A plaintiff 'may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus.'" Id. A plaintiff must claim that "(i) he was treated differently

[12] Id., p. 13.
[13] The failure to interview Plaintiff Applicants could perhaps give rise to a procedural due process claim, but it was not pled.

than other similarly situated supplicants and (ii) the differential treatment resulted from a gross abuse of power, invidious discrimination, or some other fundamental procedural unfairness." Pagán, 448 F.3d at 34.

Defendants move the Court to dismiss the Equal Protection claims arguing Plaintiffs are restating their First Amendment claims, have failed to state they have been intentionally treated differently from others similarly situated and that there is no rational basis for the differential treatment. Back Beach Neighbors Comm. v. Town of Rockport, 63 F.4th 126, 130 (1st Cir. 2023). Plaintiffs, on the other hand, argue the Complaint contains enough facts to establish Defendants intentionally treated Plaintiffs differently because of their political affiliation and that "no rational explanation exists for such treatment other than discrimination itself."[14]

Plaintiffs' overarching claim in the Complaint is they were unjustly denied promotions due to political affiliation and that "[t]he promoted personnel were granted higher salaries as a reward for their support of Governor [] Pierluisi[‘s] re-election campaign."[15] The Court notes that, although very vaguely alleged, these equal protection violations are essentially their First Amendment claims reworded to fit Fourteenth Amendment Equal Protection violation allegations. "An equal protection claim alleging political discrimination merely restates a First Amendment political discrimination claim and, as [Courts] have said repeatedly, should [be] considered under the First Amendment." Uphoff Figueroa v. Alejandro, 597 F.3d 423, 430 n. 8 (1st Cir. 2010); see also Morales-Santiago v. Hernández-Pérez, 488 F.3d. 465, 471 (1st Cir. 2007).

[14] Id., p. 15
[15] Docket No. 1, ¶ 96.

The abuse of power standard in equal protection cases has been equated to the "shocks the conscience" standard used in substantive due process cases. Id., at 36. As previously discussed, the allegations fail to comply with this standard. On the other hand, invidious discrimination has been defined as "discrimination based on suspect or quasi-suspect classifications." Id., at 35-36. The Complaint makes no allegations that Plaintiffs are members of a suspect or quasi-suspect class or that they were discriminated against on this basis.

Finally, in addressing the "fundamental procedural unfairness", procedural irregularities must be raised. Id., at 34. As previously discussed, from Plaintiffs' own admission, no procedural due process violation was raised. Merely including the conclusions of the Report, without more, is not enough. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (It is a long settled appellate rule that the "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Therefore, the Motion to Dismiss the Fourteenth Amendment Equal Protection claim is GRANTED. Consequently, the Equal Protection claims filed against Defendants Commissioner Concepción, Governor Pierluisi and Secretary Torres, in their personal capacities, are DISMISSED WITH PREJUDICE. (Docket No. 17).

**D. State law claims.**

Finally, Defendants argue that, since all federal claims must be dismissed with prejudice, this Court is deprived of federal question jurisdiction and should decline to exercise supplemental jurisdiction and dismiss the state law claims. Plaintiffs do not oppose this request.

Plaintiffs' Complaint alleges Defendants have violated their constitutional rights under Article II, Sections 1, 8 and 16 of the Puerto Rico Constitution. P.R. Const., art. II, sec. 1, 8 and 16. Specifically, they posit that Defendants "conspired to, and [ ], intentionally violated Plaintiffs' human dignity, attacked their honor and reputation as highly commended firefighters and injured them in their employment by refusing to promote them in violation of state law and the agency's own rules, regulations and procedures."[16]

However, as there is no actionable cause of action under federal law, the Court in its discretion declines to exercise supplemental jurisdiction over claims arising under state law. 28 U.S.C. § 1367(c)(3). Therefore, all state law claims filed against all Defendants are DISMISSED WITHOUT PREJUDICE. (Docket No. 17).

## CONCLUSION

In view of the foregoing, Defendants' "Motion to Dismiss for Failure to State a Claim" (Docket No. 17) is GRANTED, as follows:

- All claims filed against all Defendants, in their official capacities, are DISMISSED WITH PREJUDICE due to Eleventh Amendment immunity.
- The First Amendment political discrimination claims filed against Defendants Commissioner Concepción, Governor Pierluisi and Secretary Torres, in their personal capacities, are DISMISSED WITH PREJUDICE for failure to plead knowledge of opposing political affiliation as required for a *prima facie* political discrimination claim.

[16] Id., ¶ 147.

- The Fourteenth Amendment Due Process and Equal Protection claims filed against Defendants Commissioner Concepción, Governor Pierluisi and Secretary Torres, in their personal capacities, are DISMISSED WITH PREJUDICE for failure to state a claim.
- All state law claims filed against all Defendants are DISMISSED WITHOUT PREJUDICE.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 19th day of August 2026.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES DISTRICT JUDGE